FIDELITY SAVINGS AND LOAN AS-
SOCIATION, a California Corpora-
tion, Plaintiff-Appellant,

v.

REPUBLIC INSURANCE COMPANY,
a corporation, Defendant-Appellee.

No. 73–2233.

United States Court of Appeals,
Ninth Circuit.

March 31, 1975.

Clayton O. Rost (argued), Palo Alto, Cal., for plaintiff-appellant.

Raymond M. Alexander, Jr. (argued), John Michael McCormick, Beverly Hills, Cal., for defendant-appellee.

OPINION

Before CHOY and SNEED, Circuit Judges, and BEEKS,* District Judge.

CHOY, Circuit Judge:

Fidelity Savings & Loan Association appeals from a judgment of dismissal with prejudice of its claim to recover litigation expenses from Republic Insurance Co., its indemnitor. We affirm.

*Factual Background*

Appellant instituted this action against two insurance companies who issued

---

* Honorable William T. Beeks, United States District Judge, Western District of Washington, sitting by designation.

Standard Form 22 Savings and Loan Blanket Bonds for two savings and loan associations. Appellee Republic issued in favor of Fidelity a bond which was effective from August 1, 1962 through August 1, 1968. Fireman's Fund, the other insurance company, issued to Trans-Bay Federal Savings & Loan Association a bond which on its face indicated an effective date of December 15, 1960, and a termination date of December 15, 1966. At no time was Trans-Bay insured under any Republic bond.

On March 1, 1966 Trans-Bay and Fidelity merged, and, as a result Fidelity succeeded to all the rights and assets as well as liabilities of Trans-Bay. Among the liabilities acquired by Fidelity were several law suits pending against Trans-Bay that were based on allegedly fraudulent acts committed by Trans-Bay employees before the merger. Fidelity, with mixed results, defended the Trans-Bay law suits and later brought suit against both Republic and Fireman's Fund seeking indemnification for only its own attorneys' fees and costs.

The district court granted Republic's motion to dismiss the suit as to Republic for failure to state a claim and commented that appellant's remedy, if any, was limited to its action against Fireman's Fund, who had issued a bond in favor of Trans-Bay.

### The Loss Sustained

This appeal raises an interesting question of first impression: whether a standard banker's blanket bond issued to Company A covers litigation costs incurred by Company A *after* its merger with Company B for its defense of law suits filed against Company B *before* the merger.

The basic underwriting agreement provides: [1]

The Underwriter in consideration of an agreed premium, and subject to the Declaration made a part hereof, the General Agreement, Conditions and Limitations and other terms of this bond, agrees with the Insured, in accordance with the Insuring Agreement hereof to which an amount of insurance is applicable as set forth in Item 3 of the Declarations and with respect to loss Sustained by the Insured at any time but discovered during the Bond Period to indemnify and hold harmless the Insured for: . . ..

The bond then describes the items which are covered by the bond.[2] Paragraph D of the agreement, the section under which this suit was brought, provides:

The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceedings brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. . . .

In order to recover attorneys' fees and costs under the bond agreement, it must be shown that the underlying claims against the insured if established would be collectible by the insured against the insurer. And according to the terms of the Republic bond, it covers

---

1. This section and all other sections of the Republic Bond agreement discussed herein are standard provisions of Blanket Bond, Standard Form No. 22 and are identical to corresponding sections of the Fireman's Fund agreement with Trans-Bay.

2. For example, the underwriter promises to indemnify for any loss through any dishonest, fraudulent or criminal act of any of the insured's employees, whether or not the insured is legally liable for such act; and for any loss of property through robbery, burglary, larceny, damage or destruction, or unexplainable disappearance.

all *"losses sustained by the Insured* at any time but discovered during the bond period." (emphasis added) Thus, the critical question in this suit for indemnity becomes: whether any claim against Trans-Bay if established would constitute a *loss sustained by Fidelity,* the insured and successor in interest to Trans-Bay.

 Republic's position, accepted by the district court, is that the litigation expenses are not recoverable because the underlying "losses" occurred prior to the merger and, consequently, were sustained not by Fidelity but by Trans-Bay, a noninsured party. We agree. Case law interpreting the notice provision of the banker's blanket bond supports the view that "the word 'loss' refers to a condition in which the insured would be subjected to a claim or demand 'out of which a legal liability might arise,' and not to an adjudicated liability." Mount Vernon Bank & Trust Co. v. Aetna Casualty & Surety Co., 224 F.Supp. 666, 670 (E.D.Va.1963); *accord,* Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co., 426 F.2d 729, 739 (5th Cir. 1970). Thus, the "loss" occurs at the time of the activity giving rise to the claim against the insured and not at the time of trial proceedings or entrance of judgment.

Fidelity does not take issue with this general rule and concedes that any loss to Trans-Bay was sustained prior to the merger. It argues, however, that Fidelity sustained a "loss", within the meaning of the bond, at the time of and by virtue of the merger. Fidelity's argument is based solely on the fact that at the moment of merger it became subject to all of Trans-Bay's liabilities. Thus, according to appellant, on March 1, 1966—a date covered by the Republic bond—all of Trans-Bay's liabilities became Fidelity's liabilities and all of Trans-Bay's *losses* became Fidelity's *losses.*

The logic of appellant's position, however, does not withstand analysis. In the first place, Fidelity takes the inherently inconsistent position that *one* set of events giving rise to claims *solely* against Trans-Bay may result in a "loss" to Trans-Bay prior to the merger *and* a "loss" to Fidelity occurring at the moment of merger. But even apart from this inconsistent argument, we cannot accept appellant's view that Fidelity did in fact sustain a loss on the date of merger. It is beyond dispute that Fidelity by virtue of the merger became subject to Trans-Bay's debts and liabilities; however, it is an unwarranted leap in logic to conclude that the acquisition of Trans-Bay's liabilities amounted to a *new* "loss" in the hands of Fidelity, the surviving corporation. What appellant fails to recognize is that a merger does not create *new* liabilities or losses in the surviving corporation but merely allows pre-existing liabilities bundled up with pre-existing assets to survive the fusion of corporate bodies.

Appellant relies to a great extent on the broad federal policy encouraging bond coverage for bank liability [*see* 12 C.F.R § 563.19] and the general public policy requiring that ambiguities in insurance contracts be resolved against the insurer. *See* Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 437, 296 P.2d 801, 809 (1956). Such public policies, however, do not require a finding of coverage in cases like this one where the logic and plain meaning of the bond agreement indicates no coverage. *See, e. g., Continental Casualty, supra,* 46 Cal.2d at 432, 296 P.2d at 806. As the district court found, the proper defendant to Fidelity's suit is not Republic but Fireman's Fund, Trans-Bay's indemnitor at the time of the events giving rise to the suits against Trans-Bay.

In its brief appellant urges this court to consider certain facts, though not pleaded, that indicate Fidelity's ignorance until after the merger of the suits pending against Trans-Bay. Because we find, as indicated *supra,* that Fidelity never sustained a loss within the meaning of its contract with Republic, the moment of appellant's discovery of the law suits is irrelevant to our determination here of the insufficiency of appel-

lant's complaint. Appellant can prove no set of facts in support of its claim which would entitle it to relief [Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)], and the dismissal must be affirmed.[3]

3. In arguing that it did sustain a loss on the date of the merger, appellant relies on Section 8 of the Republic bond agreement. However, that section, dealing with limitations on Republic's coverage if the insured's loss is covered by another policy, is an exclusionary clause and as such cannot be relied upon to impose an obligation not otherwise imposed. *See* Pacific Employers Insurance Co. v. Maryland Casualty Co., 65 Cal.2d 318, 323, 54 Cal.Rptr. 385, 387, 419 P.2d 641, 643 (1966).