**FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, Plaintiff–Appellant,**

**v.**

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, and Does 1 through 50, inclusive, Defendant–Appellee.**

**No. 90–16124.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Decided Dec. 20, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 4, 1992.

---

Edmund L. Regalia and Daniel R. Miller, Miller, Starr.& Regalia, Oakland, Cal., for plaintiff-appellant.

David T. DiBiase and Gary J. Valeriano, Anderson, McPharlin & Conners, Los Angeles, Cal., for defendant-appellee.

Before: TANG, REINHARDT, and TROTT, Circuit Judges.

## ORDER

The opinion in the above-entitled case filed December 20, 1991, and appearing at 951 F.2d 1134 (9th Cir.1991), is amended as follows:

With this amendment, the panel has voted unanimously to deny the petition for rehearing.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter. Fed. R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

TROTT, Circuit Judge:

First American Title Insurance Company ("First American") appeals the summary judgment granted in favor of St. Paul Fire and Marine Insurance Company ("St. Paul") in First American's action against St. Paul for declaratory relief and for bad faith breach of an insurance contract. First American's lawsuit arose from St. Paul's denial of coverage for damages incurred by First American. The district court granted summary judgment holding that First American did not suffer a loss until after coverage had expired. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we reverse and remand.

### I

St. Paul issued First American an employee fidelity insurance bond entitled "Insurance Companies Blanket Bond, Standard Form No. 25." The duration of the bond coverage was from May 10, 1980 through May 10, 1982.[1] Based on the bond provisions, First American was indemnified for covered "losses" "discovered" on or before May 10, 1983. The bond provided coverage for "any loss through any dishonest or fraudulent act of any of the employees [of First American]...." St. Paul also agreed to indemnify against "losses sustained ... while the bond [was] in force" which were "discovered ... prior to the expiration of 12 months after the termination of [the] bond...." In addition, St. Paul agreed to indemnify First American against

> court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.

Commercial Western Finance ("CWF"), a San Francisco secondary mortgage issuer, created notes and deeds of trust by buying

---

1. Pursuant to a release, signed by First American, Bond coverage was terminated.

and arranging through controlled entities to build on properties in Monterey and Santa Cruz Counties. The controlled entity would pay a portion of the purchase price to the seller of the property and would execute notes and deeds of trust to CWF to evidence and secure the remaining amount due on the purchase price. Investors would receive from CWF fractional interests in these notes and deeds of trust.

First American was employed by CWF to close its transactions in the Santa Cruz–Monterey County areas. A First American employee, Richard McCarroll, agreed to handle the CWF escrow work in the Aptos office of the Santa Cruz County operation of First American. Between May 1980 and the summer of 1981, McCarroll fraudulently closed all of the First American CWF escrow accounts. This activity was discovered by First American in late 1981.

On December 18, 1981, First American's attorney wrote a letter to St. Paul giving notice of lawsuits filed by property sellers as a result of the insured employee's fraudulent activity. The letter also stated that "First American [had] received some indication that the numerous assignees ... [would] be filing suit or [would] be joining the existing litigation...."

On November 2, 1984, *Aaroe v. First American, et al.* was filed by investors who were defrauded by the actions of First American's employee. The final judgment was rendered against First American on July 17, 1989, for $4.5 million.[2] It is this judgment that spawned the current litigation.

On August 21, 1989, First American filed with St. Paul a proof of loss against the bond resulting from the *Aaroe* judgment. St. Paul denied First American's claim on the basis that the loss suffered was neither "sustained" nor "discovered" within the effective dates of the bond.

First American filed this action against St. Paul for declaratory judgment and bad faith breach of an insurance contract. The district court granted summary judgment in favor of St. Paul reasoning that: (1) California law defined "loss" under the

bond to be actual physical loss, not simply potential loss; (2) attorney's fees and costs for the disputed lawsuit were not covered by the policy; and (3) St. Paul had neither waived nor was estopped from asserting its coverage defenses.

## II

### A

We review de novo the district court's grant of summary judgment. *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir.1991). Our review is governed by the same standard used by the district court pursuant to Fed.R.Civ.P. 56(c). *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Therefore, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Datagate, Inc. v. Hewlett–Packard Co.*, 941 F.2d 864, 867 (9th Cir.1991).

### B

We must determine if, viewing the evidence most favorably to First American, the district court was correct in designating the *Aaroe* judgment as the "loss" allegedly covered by the bond. After examining the plain language of the bond agreement itself, we conclude that the district court erred in its holding.

St. Paul's position, accepted by the district court, is that the *Aaroe* litigation became a "loss" when judgment was entered. Because the judgment was entered in July of 1989, well after the May 10, 1983, expiration of the one-year discovery period for bond coverage, St. Paul argues that the judgment is not a covered "loss." To support this conclusion, St. Paul and the district court rely on California authority interpreting "loss" in the context of notice provisions.[3]

In contrast, First American urges the resolution of this case based solely on interpretation of the bond provisions. We agree with First American's position that the

---

**2.** The verdict was settled and fully satisfied in the amount of $3.42 million on April 11, 1990.

**3.** *See Downey Savings & Loan Ass'n v. Ohio Casualty Ins. Co.*, 189 Cal.App.3d 1072, 234 Cal.

bond language yields only one reasonable interpretation.

The bond provides coverage for direct losses, such as damaged or lost property, incurred by First American as a result of an employee's fraudulent conduct. In addition, the bond covers third party claims against First American arising from an employee's fraud. Because the *Aaroe* litigation resulted in a third party claim against First American, our analysis is limited to interpretation of the bond provisions relating to third party claims.

The "Court Costs and Attorneys' Fees" clause provides for indemnification for any lawsuit "brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss ... which, if established against the insured, would constitute a valid and collectible loss ... under the terms of [the] bond." The bond provision twice uses the word "loss."[4] It is clear that the second "loss" is a subset of the first "loss." The second "loss" refers to those losses which are "established ... [thus] valid and collectible." An example is a judgment granted in a legal proceeding—like the one rendered against First American in the *Aaroe* litigation.

The first "loss" in the "Court Costs and Attorneys' Fees" provision means something broader than a judgment. It means the events which create the "liability or alleged liability" which must be litigated in a "suit or legal proceeding brought against the Insured," and that may lead to a "valid and collectible loss." That is, the first loss, "if established" by a court's judgment, becomes the second loss. An example is the employee's fraud. By the terms of the insurance bond, it is the first "loss," the employee's fraudulent conduct, which must be discovered by May 10, 1983.

Our interpretation of the policy is further bolstered by Section 4, the "Loss–Notice" provision of the bond. Section 4 provides, in relevant part:

> Legal proceedings for recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after such proof of loss is filed with the Underwriter or after the expiration of the 24 months from the discovery of such loss, except that any action or proceeding to recover hereunder on account of any *judgment against the insured* in any suit mentioned in the Clause entitled *Court Costs and Attorneys' Fees,* or to recover attorneys fees paid in any such suit, shall be begun *within 24 months from the date upon which the judgment in such suit shall become final.*

(Emphasis added).

The only reasonable interpretation, in reconciliation with the one year limitation for discovery of loss, is that fraudulent acts, creating a prospective collectible loss, which ultimately conclude in a judgment against the insured, are covered by the bond. In addition, indemnification for court costs and attorney's fees in defending a third party claim is subject to no express time limitation. To impose a time limitation to liquidate the loss would be contrary to the Loss–Notice provision.

The manifestation of the loss, the judgment resulting from the third party claim, is a "valid and collectible loss" under the bond regardless of when it is rendered. As there is no doubt that McCarroll's fraud was discovered and reported to St. Paul by May 10, 1983, we hold that the terms of the insurance bond mandates coverage for First American's resulting $3.42 million "loss." To hold otherwise would require the insured to incur, discover and be adjudged liable for the loss within the first

Rptr. 835 (1987), *cert. denied,* 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988); *Pacific–Southern Mortgage Trust Co. v. Ins. Co. of North America,* 166 Cal.App.3d 703, 212 Cal.Rptr. 754 (1985).

4. First American argues that this court has already interpreted "loss" to mean "a condition in which the insured would be subjected to a claim or demand out of which a legal liability might arise and not to an adjudicated liability." *Fidelity Savings and Loan Assoc. v. Republic Ins. Co.,*

513 F.2d 954, 956 (9th Cir.1975) (internal quotations omitted). Because *Fidelity Savings* was interpreting the notice provision of a banker's blanket bond, we do not find it controlling. Likewise, the California authority relied on by St. Paul and the district court were interpretations of the notice provision. Indemnity and coverage provisions are distinct from notice provisions. The varied rationales underlying rules of interpretation mandate each provision be construed in a manner conducive to its particular goals.

year of the bond period. It is illogical that identical bond provisions can be read to provide coverage for some lawsuits and not others, depending upon how quickly lawsuits are finalized, although identical conduct occurred at exactly the same time. Because of the inherent delays in the judicial process, the interpretation urged by St. Paul is unreasonable and inconsistent with the express bond provisions.[5]

In order to receive indemnification for court costs and attorney's fees relating to the *Aaroe* litigation, the bond agreement requires that the underlying claim be a "loss" covered by the bond. The conduct, which culminates in the lawsuit to recover damages, must be fraudulent acts of an employee. The *Aaroe* litigation satisfies the bond provisions. *Aaroe* was filed against First American to recover damages arising from McCarroll's closure of escrow accounts. St. Paul is also liable for attorney's fees and court costs related to the *Aaroe* litigation.

### III

First American suffered a "loss" covered under the employee fidelity insurance bond when its employee fraudulently closed escrow accounts. The "loss" became "valid and collectible" when judgment was entered in the *Aaroe* litigation. The case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**5.** First American argues that St. Paul waived or is estopped from asserting the coverage provisions of its bond. The trial court held that St. Paul was not estopped. Because we find that First American was covered under the provi-

sions of the bond, we need not reach the district court's conclusion regarding this issue.

