LINCOLN TECHNICAL INSTITUTE OF ARIZONA, INC., an Arizona corporation, et al., Plaintiffs,

v.

FEDERAL INSURANCE COMPANY, an Indiana corporation, Defendant.

No. CIV 93–1536–PHX–SMM.

United States District Court,
D. Arizona.

June 30, 1994.

Sharon Brook Shively, Sacks, Tierney & Kasen, P.A., Phoenix, AZ, for Lincoln Technical Institute of Arizona, Inc., Universal Technical Institute of Texas, Inc.

William F. Haug, Jeff R. Wilhelm, Julianne C. Wheeler, Jennings & Haug, Phoenix, AZ, for Federal Insurance Company.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

### INTRODUCTION

On March 29, 1994, Defendant filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs responded in opposition to the Motion and cross-moved for summary judgment. The motions have been fully briefed and are now ready for the Court's consideration.

### STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). "One of the principal purposes of the summary judgment rules is to isolate and dispose of factually unsupported claims." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The disputed fact(s) must be material. *Id.* Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

The dispute must also be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249, 106 S.Ct. at 2510–11. There is no issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11. In a civil case, the question is:

> whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512.

The moving party who has the burden of proof on the issue at trial must establish all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law. *Fontenot v. Upjohn,* 780 F.2d 1190,

1194 (5th Cir.1986); *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986); *cf. High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563 (9th Cir.1990) (discussing moving party's differing burdens when it bears burden of persuasion at trial, and when the non-moving party bears the burden of persuasion at trial). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Thus, summary judgment is proper if the non-moving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Id.*

## FACTS

Plaintiffs are educational facilities. Effective April 1, 1989, Defendant Federal Insurance Company [hereinafter "Federal"] issued a crime insurance policy to Plaintiffs. The policy provided coverage in the amount of $100,000.00 for employee theft subject to a $1,000.00 deductible. The policy's coverage limit was increased to $1,200,000.00 with a $25,000 deductible to be effective on and after November 14, 1991. Plaintiffs cancelled the policy effective April 1, 1992.

On June 16, 1992, Defendant Federal was advised by Plaintiffs that Anita Parker, the Accounting Manager in Plaintiff's Houston, Texas office, may have stolen money from the Plaintiffs. Subsequent investigation led to the determination that Ms. Parker had, in fact, stolen monies from Plaintiffs. Ms. Parker stole (1) $8,550.00 before the effective date of any policy between Plaintiffs and Defendant; (2) $310,666.72 between April 1, 1989 and November 13, 1991; (3) $20,678.00 between November 14, 1991 and April 1, 1992; and (4) $7,513.26 after April 1, 1992. Thus, Plaintiffs sustained a loss of $310,666.72 while they carried an insurance policy with $100,000.00 policy limit, and a $20,678.00 while they carried a policy with a $1.2 million limit, but with a $25,000.00 deductible.

Defendant paid the $100,000.00 policy limit to Plaintiffs on August 12, 1993 for the losses sustained between April 1, 1989 and November 13, 1991. Plaintiffs, however, wanted the $1.2 million policy limit provided by the November 14, 1991 increase to apply to all thefts occurring prior to the policy's April 1, 1992 termination date. Defendant disagreed, and Plaintiff filed suit.

## DISCUSSION

### I. THE GOVERNING POLICY PROVISIONS

The insurance policy expressly limits the policy's benefits to the policy limits in effect at the time the loss was sustained or the amount recoverable under the policy, whichever is the smaller. *See* Section 3.6 of the Policy. This section is clear an unambiguous and is therefore entitled to a construction consistent with the plain meaning of the terms. *See, e.g., Thomas v. Liberty Mut. Ins. Co.,* 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (Ct.App.1992); *Mid–Century Ins. Co. v. Duzykowski,* 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982); *Stearns–Roger Corp. v. Hartford Acc. & Indem. Co.,* 117 Ariz. 162, 571 P.2d 659 (1977).

The increased policy limit effective November 14, 1991 was issued with an endorsement which specifically provided that the increased amount of coverage would apply only to losses sustained on or after the effective date of the additional coverage provided by the endorsement. *See* Endorsement No. 7. Given the clear language of this provision, the Court may not "take the easy way out by inventing an ambiguity and then resolving it to find coverage where none exists under the policy." *Security Ins. Co. of Hartford v. Andersen,* 158 Ariz. 426, 428, 763 P.2d 246, 248 (Ct.App.1988).

### II. LOSSES SUSTAINED

Federal's fidelity insurance policy is not an "occurrence" or "accident" based comprehensive general liability policy. Rather, it is a crime insurance policy which covers direct losses that stem from an employee's wrongful act. *See generally State v. Glens Falls Ins. Co.,* 125 Ariz. 328, 609 P.2d 598 (Ct.App.1980).

Plaintiffs attempt to argue that the term "loss sustained" is ambiguous simply because it is not defined in the insurance contract. It is not. The "loss sustained" language in the

policy is governed by the general rule of insurance law that a "loss" under a direct coverage crime insurance policy occurs when the insured parts with money due to the fraud or dishonesty of an employee. *See, e.g., Pacific–Southern Mort. Trust Co. v. Insurance Co. of North Am.,* 166 Cal.App.3d 703, 710, 212 Cal.Rptr. 754, 757 (1985); *Fidelity Sav. & Loan Ass'n v. Republic Ins. Co.,* 513 F.2d 954, 956 (9th Cir.1975); *cf. First Am. Title Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 971 F.2d 215 (9th Cir.1991); *California Union Ins. v. American Diversified Sav. Bank,* 948 F.2d 556 (9th Cir.1991). Applying this rule to the present case, Anita Parker embezzled money from the Plaintiffs on a number of occasions. Each time she stole monies, the Plaintiffs "sustained" a "loss" within the plain and non-ambiguous meaning of the "loss sustained" provision in paragraph 3.6 of the insurance policy.

### III. DOCTRINE OF REASONABLE EXPECTATIONS

#### A. The Doctrine Generally

■ It is well-settled law in Arizona that the terms of an insurance contract are to be strictly construed in favor of the insured and against the insurer. *See, e.g., Roberts v. State Farm Fire & Cas. Co.,* 146 Ariz. 284, 705 P.2d 1335 (1985) (other citations omitted). As explained above, though, the policy provisions and endorsements in question in this case are unambiguous regarding the effective dates of the increased coverage even when strictly construed. Plaintiff attempts to get around the unambiguous provisions of the policy by invoking the doctrine of reasonable expectations. This doctrine, however, is not applicable to the facts and circumstances presented by this case.

■ In 1984, the Arizona Supreme Court adopted the principle that courts should adopt and honor the reasonable expectations of the insureds. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984). This doctrine relieves an insured from certain standardized clauses of agreements which are not negotiated when the drafter has reason to believe that the insured would not have assented to the terms in question had he or she known of the terms. *Gordinier v. Aetna Cas. & Sur. Co.,* 154 Ariz. 266, 742 P.2d 277 (1987). Application of this doctrine, however, is limited to certain circumstances. As the *Darner* court noted, "since most insureds develop a reasonable expectation that every loss will be covered by their policy, ... the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by a loss." *Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ct.App. 1990) (citing *Darner,* 140 Ariz. at 390, 682 P.2d at 395), *review denied,* 168 Ariz. 144, 811 P.2d 1081 (1991). Thus, the insured's expectation of coverage must be objectively reasonable. *Id.*

#### B. Plaintiff's Alleged Lack of Adequate Notice

■ Plaintiff contends the doctrine of reasonable expectations should apply because they, as the insureds, did not receive full and adequate notice of the terms in question. *See Gordinier,* 742 P.2d at 284. There is simply no evidence to support this conclusory assertion.

Plaintiffs assert that they:

did not request or discuss these provisions with respect to the future effective dates of these endorsements, and there is no evidence in the record that the Plaintiffs requested or discussed these provisions with the Defendant. . . .

Plaintiffs' Statement of Fact at ¶ 4. The effective date of the additional coverage, however, was memorialized in a letter dated November 14, 1991 from Federal's agent, Ms. Nancy Teets, to Plaintiffs' representative, Ms. Shirley Baer. Moreover, there is no evidence whatsoever that Plaintiffs requested and paid for retrospective coverage.

■ One of the basic principles of the doctrine of reasonable expectations is that the language in the portion of the policy being challenged must be one that is not ordinarily expected to be read or understood and should not be allowed to contradict the apparent bargain made by the parties. *See, e.g., Darner,* 682 P.2d at 392–99. The endorsements at issue here are concise and

unambiguous; the average consumer could readily understand them. They are set forth separately and are not buried within boilerplate language. The effective dates are clearly indicated and the legal effect of the effective dates is fully explained in simple language: the increased policy limit "shall apply only to losses sustained on or after the effective date of said increases. All other terms and conditions remain unchanged." *See* Endorsement No. 7. Any claim that the Plaintiffs did not receive full and adequate notice is refuted by the clear language of the endorsements themselves, and by the letter sent by Federal's agent to Plaintiffs.

## C. Limited Applicability to the Doctrine

 To the extent, *arguendo*, that Plaintiffs could maintain an argument that they did not receive fair and adequate notice of the provisions in question, such a fact alone—without more—is insufficient to give rise to the application of the doctrine of reasonable expectations. The doctrine would apply in such a situation if and only if the provisions in question are either unusual, unexpected, or provisions that emasculate apparent coverage. *Gordinier*, 154 Ariz. at 272–73, 742 P.2d 277. Neither Paragraph 3.6 of the Policy nor Endorsements No. 7 or No. 8 meet these criteria.

### 1. *Prospective Additional Coverage Is Neither Unusual Nor Unexpected*

There are no provisions in the policy which include language which could have given Plaintiffs the impression that it provided retrospective additional coverage. Paragraph 3.6 of the policy describes the limited circumstances in which the insurance company would provide coverage for losses sustained prior to the effective date of the policy or the effective date of additional coverage.

> 3.6 The liability of the Company for [a] loss sustained prior to (1) the effective date of this policy or (2) the effective date additional Insureds or coverages are subsequently added is subject to the following:
>
> (A) the Insured or some predecessor in interest of the Insured carried some other bond or policy (other than a fidelity bond or policy with respect to such loss under Insuring Clause 4) which, at the time the loss was sustained afforded on or at the Premises at which the loss was sustained or on the person or persons (whether Employee(s) of the Insured or not) causing the loss, some or all of the coverage of the insuring clause of the policy applicable to the loss; and
>
> (B) such prior coverage and the right of claim for loss thereunder continued under the same or some superseding bond or policy without interruption from the time the loss was sustained until the date specified in (1) or (2) above; and
>
> (C) the loss shall have been discovered after the expiration of the time for discovery of such loss under the last such bond or policy.
>
> *The liability of the Company with respect to such loss shall not exceed the amount which would have been recoverable under the coverage in force at the time the loss was sustained or the amount recoverable under the Insuring Clause of this policy applicable to the loss, whichever is smaller.*

(Emphasis added).

According to this section of the policy, Defendant Federal covered losses sustained by the Plaintiffs before the effective date of any additional coverages added to it only if (1) the insured had similar coverage at the time of the prior loss; (2) the prior coverage was not interrupted from the time the loss was sustained and the date the additional coverage was added; and (3) the loss was not discovered until after the expiration of the time for discovery under the prior coverage. When these conditions are satisfied, as they are in the present case, there is coverage for a prior loss. The final sub-paragraph of Paragraph 3.6, however, clearly and unambiguously limits the amount of such coverage, to the policy limits in effect at the time the prior loss was sustained or the amount of coverage under the present policy, whichever is smaller.

The provisions contained in Paragraph 3.6 are neither unusual nor unexpected, as such clauses are the normal practice in the insurance industry. *See, e.g., United Bank & Trust Co. of Norman v. Kansas Bankers Sur. Co.,* 901 F.2d 1520 (10th Cir.1990); *Leucadia, Inc. v. Reliance Ins. Co.,* 864 F.2d 964, 971 (2d Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3160, 104 L.Ed.2d 1023 (1989); *White Dairy Co. v. St. Paul Fire & Marine Ins. Co.,* 222 F.Supp. 1014 (N.D.Ala.1963). All three of these cases ruled that provisions similar to those in Paragraph 3.6 precluded the insured from seeking retroactive coverage of additional coverages subsequently added.

Moreover, the provisions of Paragraph 3.6 are not of the quality or type that are normally invalidated as unusual or unexpected. For example, in *Gordinier,* 154 Ariz. at 273, 742 P.2d 277, the court ruled that an insurance policy which takes away coverage for one spouse if not residing with the other, even though premiums for both spouses had been paid, was unexpected. Similarly, in *State Farm Mut. Auto Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986), the Arizona Supreme Court declared an "other insurance" escape clause to be unenforceable because it defeated the insured's reasonable expectations of coverage. *See also Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (holding limitations in insurance policy unexpected, and thus unenforceable, in light of language in a pamphlet given to insureds before they purchased insurance which created reasonable expectations of coverage despite language in the policy), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). Neither the provisions of Paragraph 3.6 nor Endorsements Nos. 7 and 8 are unusual or unexpected within the meaning of *Gordinier, Sparks,* or *Bogart.*

### 2. Prospective Additional Coverage Does Not Emasculate Apparent Coverage

Plaintiffs argue the provisions of Endorsement No. 7 and Endorsement No. 8 are inconsistent with Paragraph 3.6 of the policy. They are not.

In response to Plaintiff's request that additional coverage be added to the policy, Federal issued Endorsement No. 7. This Endorsement increased the policy limits set forth in Item No. 2 of the declarations page from $100,000.00 to $1,200,000.00. The Endorsement clearly and unambiguously states the effective date of this additional coverage is November 14, 1991. Moreover, the Endorsement provided that the increased policy limits "shall apply only to losses sustained on or after the effective date of said increases. All other terms and conditions remain unchanged."

Federal also issued Endorsement No. 8. This Endorsement amended Item No. 3 on the declarations page to increase the deductible from $1,000.00 to $25,000.00. As with Endorsement No. 7, Endorsement No. 8 provided that the increased deductible "shall be applicable only to losses sustained by the Insured on or after the effective date of this endorsement. All other terms and conditions remain unchanged."

There is no genuine issue of material fact regarding when the increased policy limits and deductibles went into effect. They applied only to losses sustained on or after the effective dates of Endorsements No. 7 and No. 8: November 14, 1991. Moreover, the language contained in these provisions do not emasculate any coverage provided by the terms of the original policy. Until November 14, 1991, Plaintiff paid for coverage up to $100,000.00. After November 14, 1991, they paid for coverage up to $1.2 million. No reasonable person or business entity could reasonably expect that they would be provided with insurance coverage in excess of the policy amount for which they contracted. The doctrine of reasonable expectations cannot alter the plain and simple fact that Plaintiffs got that for which they bargained.

### 3. Effect of Paragraph 4.1 of the Policy

Plaintiffs also assert that Paragraph 3.6 and Endorsements Nos. 7 and 8 emasculate the coverage ostensibly provided by Paragraph 4.1 of the policy. At first blush, Plaintiffs' argument appears to have some merit, as they selectively point to the provisions of sub-paragraph 4.1(A) by arguing:

In this case, the insurer has unilaterally added a provision to Endorsement No. 7 that it now argues has the effect—notwith-

standing the provision in Section 4.1, defining the policy limits for covered "losses caused" without regard to the date when the act(s) accorded—of fixing the policy limits for "losses sustained" according to the date when the act(s) occurred. Plaintiffs' Response to Defendant's Motion for Summary Judgment at 5. This argument is without merit when the entirety of Paragraph 4.1 is considered.

Paragraph 4.1 of the policy provides:

The payment of any loss under this policy shall not reduce the liability of the Company for other losses; *provided, however, that the maximum liability of the Company shall not exceed the dollar amount set forth in Item 2 of the Declarations, "Limits of Liability"*:

(A) applicable to Insuring Clause 1 for any loss or losses caused by any Employee(s) or in which any Employee(s) is (are) concerned or implicated, either resulting from a single act or any number of such acts, regardless of when, during the period of this policy, or prior thereto, such acts occurred; . . . .

(Emphasis added). Thus, while it is true, as Plaintiffs assert, that the acts of an employee prior to the effect date of coverage may be covered, it is subject to the circumstances set forth in Paragraph 3.6 and is further limited to the policy liability limit in Item 2 of the policy declarations. When Paragraphs 3.6 and 4.1 are read in conjunction with each other and with Endorsements Nos. 7 and 8, there could be no reasonable expectation that a subsequent increase in policy limits would be applied retroactively.

## IV. CONCLUSION

Given the express provisions in the insurance policies and the endorsements, there is no genuine issue of material fact regarding Defendant's responsibilities concerning the losses sustained by Plaintiffs. The Plaintiffs sustained a loss of $310,666.72 while they carried an insurance policy with $100,000.00 policy limit. The Defendant paid the policy limit in accordance with the plain meaning of the policy. There is no further liability on Defendant's behalf concerning the balance of the loss sustained by Plaintiffs between April

1, 1989 and November 14, 1991 since the balance of that loss was in excess of the applicable policy limits.

Similarly, there is no liability on Defendant's behalf for the $20,678.00 loss Plaintiffs sustained after November 14, 1991 and before the policy termination because the amount of the loss is less than the applicable $25,000.00 deductible. The Defendant is simply not liable for the amounts sought by Plaintiffs in this lawsuit as a matter of law.