76 F.3d 387
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LINCOLN TECHNICAL INSTITUTE OF ARIZONA, INC., an Arizona
Corporation, dba Universal Technical Institute;
and Universal Technical Institute of
Texas, Inc., a Texas
Corporation,
Plaintiffs-Appellants
v.
FEDERAL INSURANCE COMPANY, an Indiana Corporation, Defendant-Appellee.
 Nos. 94-16369.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1995.*
Decided Jan. 31, 1996.
 
 1
 Before: GOODWIN and REINHARDT, Circuit Judges, and KING,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Plaintiffs LINCOLN TECHNICAL INSTITUTE OF ARIZONA, INC., an Arizona Corporation, dba UNIVERSAL TECHNICAL INSTITUTE; and UNIVERSAL TECHNICAL INSTITUTE OF TEXAS, INC., a Texas Corporation (collectively "Lincoln") appeal from an order granting Defendant Federal Insurance Company's ("Federal's") Motion for Summary Judgment, declaring that Federal had no further coverage obligation other than the benefits Federal had already paid to Lincoln. We have jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 BACKGROUND
 
 4
 Federal issued a fidelity insurance policy ("the Policy") effective April 1, 1989 to Lincoln. The Policy provided $100,000 worth of crime coverage for "losses sustained" because of employee theft, with a $1,000 deductible. The Policy's coverage limit was increased to $1,200,000 effective November 14, 1991, with a $25,000 deductible. Lincoln canceled the Policy effective April 1, 1992.
 
 
 5
 On June 16, 1992,[1] Lincoln advised Federal that a Lincoln employee might have stolen some of its money. It was eventually determined that an employee had stolen (1) $8,550 before April 1, 1989 (the effective date of the Policy); (2) $310,666.72 between April 1, 1989 and November 13, 1991 (during the Policy period, but before the effective date of the coverage-limit increase from $100,000 to $1,200,000); (3) $20,678 between November 14, 1991 and April 1, 1992 (during the Policy period and after the coverage-limit increase); and (4) $7,513.26 after April 1, 1992 (after the Policy had been canceled).
 
 
 6
 Accordingly, Federal paid Lincoln $99,000 (the policy limits from April 1, 1989 to November 13, 1991, minus the deductible) on August 12, 1993. Federal refused to pay for losses sustained outside the Policy periods. Federal also did not pay for losses sustained between November 14, 1991 and April 1, 1992 because the amount stolen during that period ($20,678) did not exceed the $25,000 deductible. Lincoln, however, contended that the $1,200,000 coverage limit applied for all thefts occurring before April 1, 1992. After Federal denied further coverage than the $99,000, Lincoln filed the instant lawsuit.
 
 
 7
 The trial court interpreted the Policy provisions and determined that the term "loss sustained" is unambiguous. In an embezzlement context, a "loss" is "sustained" each time an employee steals money. The court also determined that there was no evidence that Lincoln could have a reasonable expectation of coverage. The court granted summary judgment in favor of Federal. Lincoln appeals.
 
 DISCUSSION
 
 8
 We review grants of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). The parties do not dispute that the effective date of the coverage-limit increase was November 14, 1991. It is also undisputed that Endorsement 7 states that "such increased amount(s) [from $100,000 to $1,200,000 in employee theft coverage] shall apply only to losses sustained on or after the effective date of said increase(s)." Lincoln, however, argues that Policy sections 4.1 and 3.6 create an ambiguity regarding coverage of "losses sustained" prior to the effective date.
 
 
 9
 Section 3.6 does indeed set forth certain limited circumstances where Federal would provide coverage for losses sustained prior to the effective date.[2] It reads in full as follows:
 
 
 10
 3.6 The liability of the Company for loss sustained prior to (1) the effective date of this policy or (2) the effective date additional Insureds or coverages are subsequently added, is subject to the following:
 
 
 11
 (A) the Insured or some predecessor in interest of the Insured carried some other bond or policy (other than a fidelity bond or policy, with respect to such loss under Insuring Clause 4) which, at the time such loss was sustained, afforded on or at the Premises at which the loss was sustained or on the person or persons (whether Employee(s) of the Insured or not) causing the loss, some or all of the coverage of the Insuring Clause of the policy applicable to the loss; and
 
 
 12
 (B) such prior coverage and the right of claim for loss thereunder continued under the same or some superseding bond or policy without interruption from the time the loss was sustained until the date specified in (1) or (2) above; and
 
 
 13
 (C) the loss shall have been discovered after the expiration of the time for discovery of such loss under the last such bond or policy.
 
 
 14
 The liability of the Company, with respect to such loss shall not exceed the amount which would have been recoverable under the coverage in force at the time the loss was sustained, or the amount recoverable under the Insuring Clause of this policy applicable to the loss, whichever is smaller.
 
 
 15
 Despite the limitations on such coverage for prior losses sustained, Lincoln repeatedly emphasizes the phrase "regardless of when during the period of this policy or prior thereto, such acts occurred" from paragraph 4.1. Lincoln's emphasis is taken out of context. The paragraph reads in pertinent part:
 
 
 16
 4.1 The payment of any loss under this policy shall not reduce the liability of the Company for other losses; provided, however, that the maximum liability of the Company shall not exceed the dollar amount set forth in Item 2 of the Declaration, "Limits of Liability":
 
 
 17
 (A) applicable to Insuring Clause 1 [Employee Theft Coverage] for any loss or losses caused by any Employee(s) or in which any Employee(s) is (are) concerned or implicated, either resulting from a single act or any number of such acts, regardless of when, during the period of this policy, or prior thereto, such acts occurred.... (emphasis added).
 
 
 18
 Paragraph 4.1, however, merely limits the maximum liability of Federal to "Item 2," regardless of when the employee theft occurred. The maximum liability set forth in "Item 2" (either in the original Limits of Liability section or in endorsements 7 and 8) contains unambiguous contract language setting forth effective dates (e.g., November 14, 1991 for the $1.2 Million of coverage at issue). Even if Federal is to provide coverage for prior theft, under paragraph 3.6 such liability is limited to the coverage limits in effect when the loss was sustained, or the amount recoverable under the insuring clause of the policy, whichever is smaller.[3]
 
 
 19
 Moreover, the term "loss sustained" is unambiguous in this context. It occurs when the money is stolen. "[A] 'loss' occurs in this context when the insured parts with the money due to the fraud or dishonesty of an employee." Pacific Southern Mortgage Trust Co. v. Insurance Co. of North America, 116 Cal.App.3d 703, 710, 212 Cal.Rptr. 754, 757 (1985); Fidelity Sav. & Loan Ass'n v. Republic Ins. Co., 513 F.2d 954, 956 (9th Cir.1975); White Dairy Co. v. St. Paul Fire & Marine Ins. Co., 222 F.Supp. 1014, 1019 (N.D.Ala.1963). And here there is no dispute about when particular amounts of money were stolen. When an insurance policy is clear and unambiguous, it must be interpreted consistently with it plain meaning. Thomas v. Liberty Mut. Ins. Co., 842 P.2d 1335, 1338 (Ariz.App.1992).
 
 
 20
 Additionally, Federal advances convincing policy arguments regarding fidelity guaranty contracts having prospective operation only, absent clear intent otherwise. Lincoln's interpretation would discourage prompt discovery of employee theft and provide an insured with the discretion of when to trigger coverage. See Leucadia, Inc. v. Reliance Ins. Co., 864 F.2d 964, 971 (2d Cir.1988); United Bank & Trust Co. v. Kansas Bankers Surety Co., 901 F.2d 1520, 1522 (10th Cir.1990).
 
 
 21
 Finally, the "reasonable expectations" doctrine as set forth in Gordinier v. Aetna Cas. & Sur. Co., 742 P.2d 277 (Ariz.1977) does not apply here. The terms are clear and unambiguous, and are not unusual. There is no evidence that UTI was not given notice of them. Moreover, UTI advanced no admissible evidence to create a genuine issue of material fact that Federal somehow promised coverage in excess of the Policy's plain terms.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Lincoln gave Federal the necessary notice under paragraph 2.1(J) of the Policy, which excludes coverage
 unless discovered and written notice thereof given to the Company within ... sixty days following termination of this policy in its entirety....
 
 
 [2]
 As Federal explains, Paragraph 3.6 is a common provision in fidelity policies providing uninterrupted coverage when different fidelity carriers write policies for consecutive policy periods. Traders State Bank v. Continental Ins. Co., 448 F.2d 280, 281 n. 1 (10th Cir.1971). [Red at 15]
 
 
 [3]
 Lincoln has offered no proof that the loss sustained prior to April 1, 1989 was recoverable under paragraph 3.6. Lincoln neither established that it was covered under a different policy at the time the loss was sustained, nor that there was no gap in the coverage when Fidelity issued the policy on April 1, 1989