65 P.3d 449

### AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Plaintiff–Appellee,

v.

### Bryan J. WHITE, Defendant–Appellant.

### No. 1 CA–CV 01–0517.

Court of Appeals of Arizona,
Division 1, Department B.

March 20, 2003.

Mariano & Allen, P.L.C. by Lynn M. Allen, Phoenix, for Plaintiff–Appellee.

Murphy, Lutey, Schmitt & Beck, P.L.L.C. by Robert E. Schmitt and Dan A. Wilson, Prescott, for Defendant–Appellant.

## OPINION

NOYES, Judge.

¶ 1 To stop Appellant from assaulting a smaller third person, Travis Wilde hit Appellant in the head with a metal pipe. Travis later pleaded guilty to aggravated assault, and Appellant later sued Travis and his parents ("the Wildes"). The Wildes' insurance carrier, Appellee ("American Family"), then filed this declaratory judgment action and moved for summary judgment, arguing that coverage for Appellant's claims was barred by the "violation of law" exclusion in the Wildes' homeowner's policy. The trial court granted summary judgment to American Family. We affirm.

### I.

¶ 2 The grand jury indicted seventeen-year-old Travis Wilde on two counts of aggravated assault. The State prosecuted him as an adult. Count I alleged that Travis "intentionally, knowingly or recklessly caused physical injury to Bryan White, using a deadly weapon or dangerous instrument, to-wit: metal pipe, in violation of A.R.S. §§ 13–1204(A)(2), 13–1203(A)(1), 13–701, 13–702, 13–801 and 13–604." Prison is mandato-

ry on conviction of this class three dangerous felony; the presumptive term is 7.5 years. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 13–604(I) (2001), –1204(B) (Supp.2002); *see also State v. Burge,* 167 Ariz. 25, 28, 804 P.2d 754, 757 (1990). Count II alleged that Travis "intentionally, knowingly or recklessly caused physical injury to Bryan White, using any means of force which caused temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part, or a fracture of any body part, in violation of A.R.S. §§ 13–1204(A)(11), (B), 13–1203, 13–701, 13–702 and 13–801." Because the State apparently did not allege that Count II was a "dangerous offense" pursuant to A.R.S. § 13–604, it appears that prison was not mandatory on conviction of this class four felony.

¶ 3 To avoid the mandatory prison term that would result if he went to trial and the jury rejected his claims of self defense and defense of others and found him guilty as charged on Count I, Travis accepted the State's offer to plead guilty to Count II as a "reckless" aggravated assault, a nondangerous offense for which probation was both possible and recommended by the State. During the change of plea proceeding, when the trial court asked what he had done to commit an aggravated assault, Travis said, "I hit Mr. White with a pipe to the head." The court then asked, "Did you understand, in striking Mr. White, that there was a significant risk that he could suffer a number of damages by you striking him with that pipe?" Travis responded, "Yes, sir." The trial court accepted the guilty plea and dismissed Count I. At sentencing, Travis received probation and a jail term.

¶ 4 Appellant's personal injury action alleged that his injuries were caused by the negligence of Travis, that this negligence should be imputed to the Wildes under A.R.S. § 12–661 (Supp.2002), and that the Wildes negligently supervised Travis.

¶ 5 American Family's declaratory judgment action was based on the following exclusion in the Wildes' homeowner's policy: "**Violation of Law. We** will not cover **bodily injury** or **property damage** arising out of ... violation of any criminal law for which any **insured** is convicted...." (Boldface omitted *infra.*) In opposition, Appellant argued that the exclusion applied only to intentional acts, and that Travis acted recklessly rather than intentionally. Appellant also argued that the exclusion was contrary to public policy, unconscionable, and contrary to an insured's reasonable expectations. On the negligent supervision claim, Appellant argued that the exclusion was inapplicable because the Wildes were not convicted of violating any criminal law. The trial court rejected all of these arguments. So do we.

¶ 6 Our jurisdiction of this appeal is pursuant to A.R.S. § 12–2101(B) and (F)(1) (1994). Our review is *de novo. See Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46, ¶ 11, 13 P.3d 785, 788 (App.2000) ("Interpretation of an insurance contract is a question of law which we review *de novo.*").

## II.

¶ 7 We first address Appellant's argument that, even if the "violation of law" exclusion is enforceable, the phrase "any criminal law" is ambiguous and thus must be construed to apply only to intentional criminal acts.

¶ 8 Insurance contracts are interpreted "according to their plain and ordinary meaning." *Id.* When policy language is unambiguous, the court does not create ambiguity to find coverage. *Sec. Ins. Co. v. Andersen,* 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988). The exclusion in question applies to "violation of any criminal law for which any insured is convicted." In our opinion, the phrase "any criminal law" plainly includes all criminal laws, not just those in which "intent" is an essential element. *See Allstate Ins. Co. v. Peasley,* 131 Wash.2d 420, 932 P.2d 1244, 1247–49 (1997) (stating that interpreting "criminal acts" to include unintentional crimes "is supported by nearly every jurisdiction in our country which has examined that phrase").[1]

1. *See also Allstate Ins. Co. v. Brown,* 16 F.3d 222, 226 (7th Cir.1994) (finding that a criminal acts

¶ 9 In interpreting an insurance policy we attempt to harmonize and give effect to all provisions so that none is rendered meaningless. *See Nichols v. State Farm Fire & Cas. Co.,* 175 Ariz. 354, 356, 857 P.2d 406, 408 (App.1993). In addition to the "violation of law" exclusion, the policy in question also contains an "intentional acts" exclusion.[2] To interpret the "violation of law" exclusion as applying only to intentional criminal acts would be to render it meaningless, given the presence of an exclusion that applies to "intentional acts" (whether criminal or not). *See Juniel,* 931 P.2d at 515 (stating that requiring intent in the criminal acts exclusion would make that exclusion redundant to the intentional acts exclusion). *See also Brown,* 16 F.3d at 225 ("An act is intentional if it is willfully or volitionally performed ... and an act is criminal if it violates the State's criminal code."); *Schurtz,* 112 Cal.Rptr.2d at 553 (determining that "the *criminal act* exclusion

is independent of the *intentional act* exclusion").

¶ 10 Because the "violation of law" exclusion unambiguously includes all criminal acts that result in conviction, it applies to Travis Wilde's conviction for "reckless" aggravated assault.

### III.

¶ 11 Appellant acknowledges that public policy proscribes indemnification of persons for losses resulting from their own willful wrongdoing. *See Ohio Cas. Ins. Co. v. Henderson,* 189 Ariz. 184, 190, 939 P.2d 1337, 1343 (1997); *Transam. Ins. Group v. Meere,* 143 Ariz. 351, 356, 694 P.2d 181, 186 (1984). Nevertheless, Appellant argues that coverage should be found in the present case because one purpose of liability insurance is to afford protection against certain negligent acts, *see, e.g., Young,* 658 So.2d at 753, and public policy favors protecting the interests of in-

exclusion encompasses unintentional but foreseeable consequences of criminal acts); *Allstate Ins. Co. v. Burrough,* 914 F.Supp. 308, 312 (W.D.Ark. 1996) ("The express language of the policy [exclusion] includes all criminal acts, no matter what the mental state required for their commission."), *aff'd,* 120 F.3d 834 (8th Cir.1997); *Allstate Ins. Co. v. Barnett,* 816 F.Supp. 492, 497 (S.D.Ind.1993) (finding a shooting victim's injuries not covered where the insured pleaded guilty to criminal recklessness while armed with a deadly weapon); *Allstate Ins. Co. v. Norris,* 795 F.Supp. 272, 273–76 (S.D.Ind.1992) (finding no coverage for an innocent bystander shot by an insured who was attempting to apprehend an assailant and was convicted of criminal recklessness); *Allstate Ins. Co. v. Talbot,* 690 F.Supp. 886, 889 (N.D.Cal.1988) (determining whether an act is criminal within the meaning of the criminal act exclusion is not governed by whether the insured intended the damages); *Hooper v. Allstate Ins. Co.,* 571 So.2d 1001, 1002–03 (Ala. 1990) (applying a criminal acts exclusion where the insured was convicted of assault after an accidental shooting); *20th Century Ins. Co. v. Schurtz,* 92 Cal.App.4th 1188, 112 Cal.Rptr.2d 547, 548 (2001) (determining that a criminal act exclusion applied without regard to the insured's intent where the insured was convicted of assault with a firearm); *Allstate Ins. Co. v. Juniel,* 931 P.2d 511, 512–14 (Colo.Ct.App.1996) (affirming that Allstate had no duty to indemnify where the insured accidently shot a neighbor and pleaded guilty to second degree felony assault); *Glover v. Allstate Ins. Co.,* 229 Ga.App. 235, 493 S.E.2d 612, 615 (1997) (determining that a criminal act exclusion applied when an insured's child shot

an innocent bystander during an altercation with others); *Horace Mann Ins. Co. v. Drury,* 213 Ga.App. 321, 445 S.E.2d 272, 273–74 (1994) (applying a violation of criminal law exclusionary clause where possession of fireworks was a misdemeanor and the insured's fireworks exploded, injuring a passenger in the insured's car); *Liebenstein v. Allstate Ins. Co.,* 517 N.W.2d 73, 75 (Minn.Ct.App.1994) ("[T]he plain language of the policy indicates that coverage is excluded for injuries resulting from a criminal act, regardless of intent."); *Allstate Ins. Co. v. Schmitt,* 238 N.J.Super. 619, 570 A.2d 488, 492 (1990) (stating that "the exclusion is applicable without reference to the mental state of the insured when he committed the crime"); *Steinke v. Allstate Ins. Co.,* 86 Ohio App.3d 798, 621 N.E.2d 1275, 1279 (1993) (concluding that the criminal act of disorderly conduct, which included recklessness as an element, triggered the exclusionary clause); *Allstate Ins. Co. v. Sowers,* 97 Or.App. 658, 776 P.2d 1322, 1323 (1989) (concluding that a conviction for resisting arrest triggered a criminal acts exclusion despite a lack of intent to injure a police officer). *Contra Young v. Brown,* 658 So.2d 750, 754 (La.Ct.App.1995) (construing a policy "to provide coverage for damages arising from nonintentional acts that may rise to the level of criminal negligence").

2. The exclusion states, "**Intentional Injury. We** will not cover **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured** even if the actual **bodily injury** or **property damage** is different than that which was expected or intended from the standpoint of any **insured.**"

jured victims. *St. Paul Fire & Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 567, 720 P.2d 540, 542 (App.1986). We agree with those general principles, and we conclude that the "violation of law" exclusion in question does not violate them. *See Schmitt,* 570 A.2d at 493–94 (finding no public policy against excluding coverage for injuries resulting from aggravated assault committed recklessly or other criminally reckless conduct).[3]

¶ 12 Appellant argues that the "violation of law" exclusion is too broad because it "applies to *any* criminal law violation, no matter how trivial, irrespective of an insured's intent or culpability and no matter that such a violation may also arise from mere negligence or inadvertence." He contends that the exclusion could be applied to any accident with "criminal consequences in the eyes of some state prosecutor," or in which the insured violated *"de minimis,* technical or obscure" laws, such as OSHA regulations, environmental protection laws, or city ordinances.[4] Any validity to this argument is dwarfed by the fact that the exclusion applies only when "any insured is convicted." Given that limitation, the exclusion is obviously "not so broad as to render the insurer's risk a nullity." *See Andersen,* 158 Ariz. at 430, 763 P.2d at 250.

¶ 13 We note, as did the *Andersen* court, that "[w]e might reach a different result if a policy excluded coverage 'in all cases where *any* violation of *any* [ ] regulation is involved,' " *id.* at 430–31, 763 P.2d at 250–51, because an insurance policy has to be reasonably interpreted. *See Allstate Ins. Co. v. Powers,* 190 Ariz. 432, 435, 949 P.2d 521, 524 (App.1997) (stating that in interpreting an insurance policy, a court should give its terms a practical and reasonable construction). We conclude, however, that, although some examples cited by Appellant would not pass a reasonableness test, a conviction for aggravated assault certainly does so, and we therefore have no present need to search for the outer limits of reasonableness in a "violation of law" exclusion.

¶ 14 Appellant also complains that the "violation of law" exclusion forces an accused to waive insurance coverage in the civil case to accept a favorable plea bargain in the criminal case. He maintains that, because the "violation of law" exclusion is predicated on a conviction that results from discretionary charging decisions by the State, it would be bad public policy to deny insurance coverage. We conclude that it would be worse public policy to encourage people to think that a homeowner's policy with a "violation of law" exclusion includes coverage for acts that result in an insured's conviction of aggravat-

---

3. *See also Burrough,* 914 F.Supp. at 312 (excluding coverage for a strict liability crime is not against public policy); *Norris,* 795 F.Supp. at 276 ("[N]o court appears to have invalidated, on public policy grounds, an exclusion for injuries caused by less-than-intentional conduct."); *Hooper,* 571 So.2d at 1002–03 (rejecting allegations that a criminal acts exclusion contravened public policy or was unconscionable after an insured committed second degree assault with a shotgun); *Juniel,* 931 P.2d at 513–16 (finding no public policy violation for an exclusion where the insured was guilty of second degree felony assault); *Peasley,* 932 P.2d at 1246–50 (rejecting a public policy challenge to a criminal acts exclusion where the homeowner committed reckless endangerment by shooting a guest); *cf. Chicago Ins. Co. v. Manterola,* 191 Ariz. 344, 348, ¶ 17, 955 P.2d 982, 986 (App.1998) (finding that a policy exclusion barring coverage for damages arising from sexual misconduct did not violate Arizona public policy); *State Farm Fire & Cas. Co. v. Powers,* 163 Ariz. 213, 214–16, 786 P.2d 1064, 1065–67 (App.1989) (upholding a policy exclusion barring family members from coverage

for bodily injury where a seriously injured minor daughter alleged parental negligence, despite the daughter's contention that the exclusion "violates the public policy of the state to protect and prevent injuries to children"). *But see Young,* 658 So.2d at 753 ("[I]t has never been against public policy to insure against liability arising from the purely negligent acts of an insured.").

4. Appellant asserts, for example, that the exclusion could conceivably be applied to preclude coverage for a homeowner who violated environmental laws by inadvertently spraying weed killer into a neighbor's yard, or to an insured who had a fire that initiated in the fireplace if the fireplace failed to meet city code requirements. Appellant also stated at oral argument that some communities require spark arresters on chimneys, and if an animal chewed through a spark arrester and a fire resulted, the homeowner could be fined for not keeping it in working order. He also questions whether coverage would exist for an insured homeowner whose dog escaped from the yard (thus violating a leash law) and bit someone.

ed assault. An insurer has no more control over a prosecutor's charging decisions (or a legislature's sentencing mandates) than does an insured, but an insurer can reasonably exclude coverage for conduct that results in a criminal conviction for aggravated assault.

¶ 15 Appellant further maintains that an insured's self-interested plea bargain in a criminal case should not operate to an insurer's benefit in a civil case. *See Garden State Fire & Cas. Co. v. Keefe,* 172 N.J.Super. 53, 410 A.2d 718, 721 (1980) ("[A] plea-entry proceeding is not and does not purport to constitute a full and fair litigation of the issues."). Appellant argues that, despite Travis's conviction of aggravated assault, Appellant should be allowed to assert in the civil case that Travis was acting in self-defense or defense of others when he injured Appellant. This argument fails as a matter of law.

¶ 16 Pursuant to A.R.S. § 13–807 (2001), "[a] defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding brought by the victim ... against the criminal defendant the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas." Appellant, who "stands in the shoes" of Travis in relation to the policy, has no greater rights than Travis to coverage under the policy. *See W. Agric. Ins. Co. v. Brown,* 195 Ariz. 45, 48, ¶ 12–13, 985 P.2d 530, 533 (App.1998) (stating that § 13–807 prohibits the insured and others from denying essential elements of the crime in a subsequent civil action).[5] Because Travis waived his claims of self-defense and defense of others by pleading guilty to aggravated assault, Appellant cannot raise those defenses in the civil action.

¶ 17 Appellant relies on *Philadelphia Indemnity Insurance Co. v. Barerra,* 200 Ariz. 9, 21 P.3d 395 (2001), to argue that the "violation of law" exclusion is unconscionable. The *Barerra* court held that an exclusion

that voided coverage when a rental car was used by anyone under the influence of intoxicants was unenforceable as a violation of the lessee's reasonable expectations. *Id.* at 12, ¶ 7, 21 P.3d at 398. That case is no support for an "unconscionability" argument, because the *Barerra* court expressly stated that it did not decide whether the exclusion in question was unconscionable. *Id.* at 18, ¶ 24, 21 P.3d at 404.

¶ 18 Appellant also relies on the reasonable expectations doctrine. It is understood that, if an insurer desires to limit its liability, it should use language that "clearly and distinctly communicates the nature of the limitation." *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 535, 647 P.2d 1127, 1133 (1982). Generally, exclusions that subtract from coverage that a consumer reasonably expects must be agreed to and intended, and not merely imposed on an unwitting consumer. *See Barerra,* 200 Ariz. at 16, ¶ 18, 21 P.3d at 402 (citing *Averett v. Farmers Ins. Co.,* 177 Ariz. 531, 534, 869 P.2d 505, 508 (1994)). A court may apply the reasonable expectations doctrine when a reasonably intelligent consumer cannot understand the policy language; when an insured does not receive full and adequate notice and the provision is unusual, unexpected, or emasculates apparent coverage; when some activity reasonably attributable to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or when some activity reasonably attributable to the insurer has induced an insured to reasonably believe that coverage exists, although the policy clearly denies such coverage. *Gordinier v. Aetna Cas. & Sur. Co.,* 154 Ariz. 266, 272–73, 742 P.2d 277, 283–84 (1987). However, "the reasonable expectation concept must be limited by something more than the fervent hope usually engendered by loss." *Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 97, 804 P.2d 822, 826 (App.1990) (quoting *Darner Motor Sales, Inc. v. Universal Un-*

---

5. *See also Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289, 297–98 (Iowa 1982) (precluding relitigation of the circumstances surrounding an insured's guilty plea, including an affirmative defense). *But see Republic Ins. Co. v. Feidler,* 178 Ariz. 528, 534, 875 P.2d 187, 193 (App. 1993). The *Feidler* court decided that a victim could litigate whether the insured was so intoxicated that he did not "intend" his acts, despite the insured's no contest plea to aggravated assault. *Id.* at 530, 875 P.2d at 189. We distinguish *Feidler* on grounds that it concerned an "intentional acts" exclusion and the present case concerns a "violation of law" exclusion.

*derwriters Ins. Co.*, 140 Ariz. 383, 390, 682 P.2d 388, 395 (1984)).

¶ 19 We find in the present case no facts to support a "reasonable expectations" revision of this insurance policy. The policy language is clear, unambiguous, and objectively reasonable; the exclusion is not lengthy, confusing, complex, or buried in the policy. *See, e.g., Barerra*, 200 Ariz. at 18, ¶ 24, 21 P.3d at 404 (examining a contract of adhesion); *see also Lincoln Tech. Inst. of Ariz., Inc. v. Fed. Ins. Co.*, 927 F.Supp. 376, 379–80 (D.Ariz. 1994), *aff'd*, 76 F.3d 387 (9th Cir.1996). A "violation of law" exclusion is common in a homeowner's policy; it is neither unusual nor unexpected. *Cf. Lincoln Tech.*, 927 F.Supp. at 380–81 (finding a policy provision limiting coverage for losses sustained prior to the effective date of the policy neither unusual nor unexpected because it was the normal practice in the industry). This record reflects no evidence that the insurer created an objective impression that the policy covered acts that resulted in conviction of aggravated assault.

## IV.

¶ 20 The American Family policy contains a "severability of insurance" clause, which provides, "**Severability of Insurance.** This insurance applies separately to each **insured.** This condition will not increase **our limit** for any one **occurrence.**" In reference to a similar clause, we recently stated, "Under this provision, we determine the applicability of exclusionary clauses separately as to any insured asserting coverage." *United Servs. Auto. Ass'n v. DeValencia*, 190 Ariz. 436, 438, 949 P.2d 525, 527 (App.1997) (citing *Cota v. Indus. Indem. Co.*, 141 Ariz. 526, 529, 687 P.2d 1281, 1284 (App.1984)). Appellant argues that this statement in *DeValencia* means that the "violation of law" exclusion does not apply to the claims against the Wildes, because only Travis was convicted of violating a criminal law. We distinguish *DeValencia.*

¶ 21 The exclusionary clause in *DeValencia* applied to "acts or omissions 'arising out of or in connection with a business engaged in by *an* insured.'" *Id.* (italics added; boldface omitted).[6] The exclusionary clause at issue in the present case applied to "violation of any criminal law for which *any* insured is convicted." (Italics added.) Appellant argues that "any" means no more than "an." Although American Family conceded the point at oral argument, we draw our own conclusions about this question of law.

¶ 22 Most courts that have construed the phrase "any insured" in an exclusion have found that it bars coverage for any claim attributable to the excludable acts of any insured, even if the policy contains a severability clause.[7] We join that majority.

---

**6.** *See also Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 462 (1992) (relying on a severability clause in declining to apply an exclusion for intentional acts by "an insured" to a minor's parents); *N.W. Nat'l Ins. Co. v. Nemetz*, 135 Wis.2d 245, 400 N.W.2d 33, 37 (1986) (finding an exclusion for intentional acts by "an insured" ambiguous when read together with a severability of interests clause).

**7.** *See McCauley Enters. v. N.H. Ins. Co.*, 716 F.Supp. 718, 721 (D.Conn.1989) (holding that an exclusion referencing "any insured" barred recovery of losses by an innocent co-insured); *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F.Supp. 413, 423 (E.D.Pa.1996) (holding that an exclusion phrased "any insured" precluded coverage despite a severability clause); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 752 (Colo.1990) (holding that an exclusion for the intentional acts of "any insured" precluded a negligent supervision claim despite a severability clause); *Oaks v. Dupuy*, 653 So.2d 165, 168 (La.Ct.App.1995) (concluding that a severability clause did not alter the scope of an exclusion clause phrased in terms of "any insured"); *Am. Family Mut. Ins. Co. v. Copeland–Williams*, 941 S.W.2d 625, 629 (Mo.Ct.App.1997) ("The use of the phrase 'any insured' makes the exclusionary clause unambiguous even in light of the severability clause."); *Am. Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531, 533–35 (Mo.Ct.App. 1995) (holding that a severability clause did not negate an exclusion for damages "arising out of business pursuits of any insured ... by an insured"); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 180, 184 (N.D.1994) (holding that an exclusion for sexual molestation by "an insured, an insured's employee or any other person involved" precluded coverage for a negligent supervision claim against another insured, notwithstanding a severability clause); *Great Cent. Ins. Co. v. Roemmich*, 291 N.W.2d 772, 774 (S.D. 1980) (finding no ambiguity in the term "any insured" in an exclusionary clause, even when interpreted with a severability of insurance provision); *Caroff v. Farmers Ins. Co. of Wash.*, 98 Wash.App. 565, 989 P.2d 1233, 1237 (1999)

¶ 23 We conclude that the phrase "any insured" in an exclusionary clause means something more than the phrase "an insured." "[T]he distinction between 'an' and 'any' is that the former refers to one object ... and the latter refers to one or more objects of a certain type." *Taryn*, 505 N.W.2d at 421.[8] As we recently stated in another case, "Courts have consistently interpreted the language 'any insured' as expressing a contractual intent to prohibit recovery by innocent co-insureds. Thus, if any one of the insureds [violates the exclusion], no other insureds can recover." *Brown v. United States Fid. & Guar. Co.*, 194 Ariz. 85, 95, ¶ 61, 977 P.2d 807, 817 (App.1998) (citations omitted). *See also Chacon*, 788 P.2d at 751 ("[U]nlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.") (quoting *Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir.1988)).

¶ 24 We also conclude that the negligent supervision claim against the Wildes is excluded because it derives from the claim against Travis, which is excluded. *See Behrens v. Aetna Life & Cas.*, 153 Ariz. 301, 302, 736 P.2d 385, 386 (App.1987) (finding that a claim for negligent entrustment or supervision could not exist apart from the excluded negligent operation of a boat); *Lumbermens Mut. Cas. Co. v. Kosies*, 124 Ariz. 136, 138, 602 P.2d 517, 519 (App.1979) ("It is evident that negligent entrustment as a distinct and

specific cause of action is not exclusive of, but rather is derived from, the more general concept of ownership, operation and use of a motor vehicle."). *See also Norgard*, 518 N.W.2d at 184 (stating that the focus of an exclusion should be the injury, not the pleaded cause of action).

## V.

¶ 25 The judgment is affirmed.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and BARBARA M. JARRETT, Judge Pro Tempore.

NOTE: The Honorable BARBARA M. JARRETT, Judge *Pro Tempore*, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and A.R.S. §§ 12–145 to –147 (1992 & Supp.2002).

(holding that exclusions of coverage for injury arising out of child molestation by "any insured" precluded coverage despite general severability clauses); *Taryn E.F. v. Joshua M.C.*, 178 Wis.2d 719, 505 N.W.2d 418, 421 (1993) (holding that an exclusionary clause referencing "any insured" precluded coverage even when read with a severability clause).

*But see W. Am. Ins. Co. v. AV & S*, 145 F.3d 1224, 1229 (10th Cir.1998) ("[T]he term 'any insured' in an exclusion clause in a policy that also contains a severability clause does not exclude coverage for all insureds when only one insured is at fault."); *Transp. Indem. Co. v. Wyatt*, 417 So.2d 568, 571 (Ala.1982) (applying a severability clause and finding the term "any insured" in an exclusion ambiguous); *Premier Ins. Co. v. Adams*, 632 So.2d 1054, 1057 (Fla. Dist.Ct.App.1994) (holding that a severability clause limited an exclusion for intentional acts by "any insured" to exclude coverage only for the

insured who intentionally caused the injury); *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224, 1228 (1998) (holding that a severability clause afforded each insured his or her own policy despite an exclusionary intentional act clause referencing "any insured"); *Worcester Mut. Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (1986) (interpreting a severability clause to nullify a motor vehicle exclusion despite the exclusion's "any insured" language); *Am. Nat'l Fire Ins. Co. v. Estate of Fournelle*, 472 N.W.2d 292, 295 (Minn.1991) (stating that a severability clause provided for separate coverage to named insureds despite a household exclusion applying to "any insured").

8. *But see Brumley*, 963 P.2d at 1227–28 (stating that the words "an" and "any" "can and often do have the same meaning").