FILED

DEC 29 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUPERSTITION CRUSHING, LLC, an Arizona limited liability company, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Delaware corporation, <br><br> Defendant - Appellee. | No. 08-16454 <br><br> D.C. No. 2:07-cv-00694-HRH <br><br> MEMORANDUM [*] |

Appeal from the United States District Court
for the District of Arizona
H. Russel Holland, District Judge, Presiding

Argued and Submitted December 3, 2009
San Francisco, California

Before: B. FLETCHER, THOMAS, and N.R. SMITH, Circuit Judges.

Superstition Crushing, LLC ("Superstition") sought reimbursement, under

the Employee Dishonesty Coverage Form of each of its five Travelers Commercial

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Crime Policies, for funds embezzled from it. Both parties moved for summary judgment. Thereafter, the district court granted summary judgment for Travelers. We have jurisdiction under 28 U.S.C. § 1291 and we affirm. Because the parties are familiar with the facts and procedural history of this case, we do not recite them here.

We review *de novo* the district court's grant of summary judgment and may affirm on any ground supported by the record. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 896 (9th Cir. 2008). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (internal quotation marks and citation omitted). Here, there are no material facts in dispute. Because this case arises under diversity jurisdiction, we apply Arizona law. *See Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 209 (9th Cir. 1980).[1]

Applying Arizona law, we find that there were five separate policies, not one continual policy. *See generally State Farm Mut. Auto. Ins. Co. v. Ash*, 888 P.2d 1354, 1359 (Ariz. Ct. App. 1994) ("Existing [automobile] policyholders whose

---

[1] We note that *Karen Kane, Inc. v. Reliance Ins. Co.*, 202 F.3d 1180 (9th Cir. 2000) is not controlling here. We must apply Arizona law. *Karen Kane* applied California law.

policies expire and who elect to continue their coverage by paying the premium billed on the insurer's renewal notice are purchasers of such insurance to the same extent as persons who purchase new policies." (citation omitted)). While *State Farm* only addresses automobile policies, we find no reason that this precedent would not be applied to fidelity policies.

Applying Arizona law to insurance contract interpretation, we interpret insurance contracts "according to their plain and ordinary meaning." *Am. Family Mut. Ins. Co. v. White*, 65 P.3d 449, 452 (Ariz. Ct. App. 2003) (internal quotation marks omitted). "When policy language is unambiguous, the court does not create ambiguity to find coverage." *Id.* If a policy clause is ambiguous, however, we must "interpret it by looking to legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008) (citing *Employers Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (Ariz. 2008)). "If an ambiguity remains after considering these factors, we [then] construe it against the insurer." *Id.* We do not, however, resort to construing ambiguities against the insurer "unless other interpretive guides fail to elucidate a clause's meaning." *Id.*

Here, the policy language of the contracts is clear and unambiguous. General Conditions 4, 10, 11, 12, 15(b), and the policy definition of "occurrence,"

make it clear that Superstition is limited to one Limit of Insurance per occurrence (here the entire embezzlement, as discussed further below). Specifically, General Condition 4 limits coverage to losses discovered no later than one year from the end of the policy period. Thus, because Superstition discovered its loss in July 2006, General Condition 4 limited coverage to the 2004/2005 policy (which was cancelled in November 2005) and the 2005/2006 policy (which expired in November 2006). General Condition 11, however, further limits coverage to one single policy's amount recoverable if the loss took place over more than one policy period. Thus, under these two provisions, Superstition is limited to coverage for the discovered loss up to a limit of insurance of $250,000.

Coupled with General Condition 12, which prohibits cumulation of policy limits regardless of the amount of years the contract is in force, these conditions clearly demonstrate that coverage is limited to one limit of insurance which is payable under the current policy year's contract.

In addition, nothing in the language of either General Condition 10 or General Condition 15(b) suggests that Superstition could claim coverage under its prior policies. These provisions only allow Superstition to "tack on" its losses that were incurred prior to discovery deadline.

4

The policies define an "occurrence" as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts." Examining the structure of the policies, we conclude that a new policy year does not trigger the beginning of a new "occurrence," as Superstition claims. Rather, the term "occurrence" unambiguously can span more than one policy period.

General Condition 10 covers certain losses that happen before the beginning of each policy period, and is "part of, not in addition to," the $250,000 limit of insurance. That limit is a *per-occurrence* coverage limit. The proviso that coverage under General Condition 10 is "part of, not in addition to," the $250,000 per-occurrence coverage limit only makes sense if an "occurrence" can begin before the beginning of one policy period and continue into another one. That proviso would be necessary only if one and the same occurrence could begin during a period of prior insurance and continue into the current period.

The fact that one employee was guilty of multiple embezzlements does not mean that there were multiple occurrences, because all of her embezzlements were part of a single "series of acts." Here, there was only one occurrence, a series of embezzlements by one employee. Thus, this interpretation is supported by the policy language as a whole, as well as by Arizona case law. In *Employers*, the Arizona Supreme Court addressed the term "occurrence" in the context of a series

of thefts by a single employee. The court noted that "[a]lthough there may be more than one 'occurrence' per year under the policy, it does not follow that losses resulting from a single employee's embezzlement scheme are themselves separate occurrences." 183 P.3d at 517.

In *Employers*, the Arizona Supreme Court also addressed public policy concerns at issue here. The court noted that the insured's interpretation, that an "occurrence" happens each time there is an individual theft, actually hurts insureds who suffer small losses during the policy period, because thefts smaller than the deductible "would be treated separately, preventing the insured from recovering at all in such cases." *Employers*, 183 P.3d at 519. This premise is equally true, even if an "occurrence" was a "series of acts" in a single policy period. Accordingly, even if this policy language were ambiguous, public policy concerns would necessitate interpreting the policy language as limiting an "occurrence" to one limit of insurance during the current policy period.

Lastly, Superstition argues that, under the reasonable expectations doctrine, it is entitled to recover under each of the policies. We disagree. Under the reasonable expectations doctrine, Arizona courts will not enforce standardized insurance policy language in the following situations:

6

1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured; [or]

2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage; [or]

3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; [or]

4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283-84 (Ariz. 1987) (internal citations omitted).  None of these situations exist here.  Rather (as noted by the district court), Superstition's expectation is simply the "fervent hope usually engendered by loss." *Am. Family*, 65 P.3d at 455 (internal quotation marks omitted).  Based upon the plain and unambiguous language of the contracts, Travelers only provided coverage for one policy limit for all losses discovered (during a particular policy period) that were caused by the act/acts of an employee (or employees working together).  Thus, the reasonable expectation doctrine does not apply.

**AFFIRMED.**

7