OPINION
McKEOWN, Circuit Judge:
Does “any” mean “any,” or does “any” mean “any one”? The answer to this seemingly simple question dictates the result in this insurance coverage case, which arises from the alleged sexual abuse of adolescent males by priests in the Roman Catholic Church of the Diocese of Phoenix (“the Diocese”). The excess indemnity policy provided by Interstate Fire & Casualty Company, Inc. (“IFC”) to the Diocese excludes “liability of any Assured for assault and battery committed by or at the direction of such Assured.... ” Based on the ordinary meaning of this exclusion and consistent with Arizona law, we conclude that “the language ‘any insured’ ... expresses] a contractual intent to prohibit recovery by innocent co-insureds.” Am. Family Mut. Ins. Co. v. White, 204 Ariz. 500, 65 P.3d 449, 457 (Ariz.Ct.App.2003). We reverse the district court’s judgment in favor of the Diocese, and vacate and remand its grant of attorneys’ fees and taxable costs.
This action follows the Diocese’s settlement of four lawsuits for alleged sexual abuse by its priests, after which the Diocese filed a declaratory judgment action seeking entitlement to indemnification under IFC’s excess liability indemnity policies. IFC’s policies typically “follow[ed] form” with those of Lloyd’s of London, the Diocese’s primary excess insurer. The general liability clause in Lloyd’s of London’s insuring policy provided:
Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term “ultimate net loss”, on account of personal injuries ... arising out of any occurrence happening during the period of Insurance.
The policy described the term “Assured” as including the Diocese and “any official, trustee or employee of the [Diocese],” working “in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese,” and “acting within the scope of his duties as such.... ” The policy excluded coverage for claims that alleged assault and battery:
THIS INSURANCE DOES NOT APPLY—
(a) to liability of any Assured for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery for purpose of preventing injury to persons or damage to property[.]
On cross motions for summary judgment, the district court in relevant part granted summary judgment in favor of the Diocese on the assault and battery exclu *955 sion. Despite finding IFC’s argument “plausible,” the district court construed the exclusion as applying only to the offending priest, concluding that “the best reading of the assault and battery clause is that ‘such assured’ means ‘that insured’; i.e., the assured who committed or directed the assault and battery.” The district court therefore concluded that the exclusion did not foreclose coverage of the sexual abuse claims.
On appeal, as before the district court, IFC contends that, because the exclusion precludes coverage for “any assured” — and because “such assured” refers back to “any assured” — the assault and battery exclusion categorically excludes coverage for both the insured who committed the assault and battery as well as innocent co-insureds. We agree with IFC’s reading of the exclusion.
Neither party disputes that the “Assured” under the policy covers not only the Diocese itself but also its priests and other employees working in the schools, parishes, agencies, and organizations directly connected to the Diocese. The question is the scope of the assault and battery exclusion, which uses the term “Assured” in two places: “any Assured,” followed by “such Assured.” Two principles guide our analysis. In interpreting the policy under Arizona law, the words “any” and “such” are to be given their ordinary meaning. See Phelps Dodge Corp. v. Brown, 112 Ariz. 179, 540 P.2d 651, 653 (1975). We read these words in the context of the policy and do not rewrite its text. See id.; see, e.g., Barber v. Old Republic Life Ins. Co., 132 Ariz. 602, 647 P.2d 1200, 1202 (Ariz.Ct.App.1982) (“[T]he court must read the policy as a whole ... with an appropriate regard for the context of the various component parts” and without “rewriting] a policy....”).
We turn first to the plain meaning of the term “such Assured.” As relevant here, the word “such” is defined as “of a kind or character about to be indicated, suggested, or exemplified” or “having a quality already or just specified — used to avoid repetition of a descriptive term.” Webster’s Third New International Dictionary 2283 (2002). This definition indicates that “such Assured” in the exclusion carries the precise meaning as the assured “just specified.” See id.; see, e.g., Spartan Petroleum Co. v. Federated Mut. Ins. Co., 162 F.3d 805, 809 (4th Cir.1998) (holding that “such” property damaged referred back to the last mentioned “property damage” in the policy at issue). Here, the assured “just specified” is “any Assured” — those who allegedly committed the assault and battery as well as innocent co-insureds.
The Diocese maintains that the phrases “any Assured” and “such Assured” should be “presumed to have different meanings” and that IFC should have used language clearly communicating a limitation of coverage. Yet the Diocese’s reading can only be reached by ignoring the plain meaning of the exclusion and jumping to the conclusion that the text is unclear. This effort to infuse ambiguity into an otherwise clear agreement is unavailing. As the Arizona Court of Appeals noted in Brown v. United States Fidelity & Guaranty Company, “when an exclusionary clause precludes recovery to ‘any insured,’ the term is not ambiguous and clearly encompasses all persons insured under the policy.” 194 Ariz. 85, 977 P.2d 807, 817 (Ariz.Ct.App.1998). Reading the policy in context, the ordinary meaning provides that “such” refers back to “any,” thus indicating that the exclusion applies to “any official, trustee or employee” of the Diocese.
The Diocese’s argument also requires that we read additional language into the text. The only assured “just specified” in *956 the exclusion is “any Assured.” A narrower specification, such as “the assured” or “that assured,” is nowhere to be found. See Sales v. State Farm Fire & Cas. Co., 849 F.2d 1383, 1385 (11th Cir.1988) (“[U]n-like the phrase ‘the insured,’ the phrase ‘any insured’ unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.”). Nor does “any” mean “any one”; the exclusion expressly states “any Assured.” We decline to cast aside the ordinary meaning of these terms in favor of words that are not included in the text. See D.M.A.F.B. Fed. Credit Union v. Emp’rs. Mut. Liab. Ins. Co. of Wis., 96 Ariz. 399, 396 P.2d 20, 23 (1964) (en banc) (“[T]he court will not pervert or do violence to the language used ... [by] expanding] it beyound [sic ] its plain and ordinary meaning or add[ing] something to the contract which the parties have not put there.”).
The plain meaning of “such Assured” also comports with Arizona law. In White, an Arizona Court of Appeals joined a “majority” of Arizona courts in “constru[ing] the phrase ‘any insured’ in an exclusion” as “bar[ring] coverage for any claim attributable to the excludable acts of any insured. ...” 65 P.3d at 456, 457; see TIG Specialty Ins. Co. v. Pinkmonkey.com Inc., 375 F.3d 365, 372 (5th Cir.2004) (holding that coverage was foreclosed because a policy exclusion “use[d] the specific term ‘such Insured’ to indicate the same insured as previously referred to,” namely, “an Insured”). We too conclude that “if any one of the insureds [violates the exclusion], no other insureds can recover.” White, 65 P.3d at 457 (alteration in original) (internal quotation marks omitted). Because we determine that the assault and battery exclusion applies to innocent co-insureds, we need not reach the remainder of the arguments raised on appeal.
We vacate the award of attorneys’ fees and taxable costs and remand to the district court to determine whether IFC is the “successful party” under Arizona Revised Statute § 12341.01, and if so, whether to award attorneys’ fees. See Med. Protective Co. v. Pang, 740 F.3d 1279, 1280 (9th Cir.2013). Costs on appeal shall be taxed against the appellee.
REVERSED in part; VACATED and REMANDED in part.