D.W. NELSON, Senior Circuit Judge,
dissenting:
Because I believe that the plain language of the policy provision relied on by IFC excludes coverage only for those individuals who commit or direct an assault or battery, I would affirm the district court. I respectfully dissent.
I agree with the majority that this case turns on what exactly the plain meaning of the phrase “such Assured” refers back to. See Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127, 1132 (1982). In my view, however, the definition of “such” adopted and applied by the majority — “having a quality already or just specified — used to avoid repetition of a descriptive term[,]” — does not refer back to the class of “any Assured[s]” “just specified.” Instead, “such” refers to those Assureds “having a quality already or just specified.” Maj. Op. at 955 (emphasis added). Referring to the language of the exclusion, I see three possible qualities that “such” can refer to. First, the exclusion identifies “the liability of any Assured,” so “such” may refer to those Assureds facing liability. Second, the exclusion references “any Assured,” meaning that “such” might refer to the entire class of those covered by the policy. Finally, the exclusion references “assault and battery committed by or at the direction of,” which means that “such” might refer to those Assureds who com *957 mitted or directed assault and battery. Of these three possible qualities, that which was “just specified” is the quality of having committed or directed assault and battery. Under the plain meaning of the word “such,” I believe that the exclusion therefore only excludes coverage for assureds who committed or directed the assault or battery giving rise to liability.
Moreover, the word “quality,” a word central to the definition of “such,” is defined as a “peculiar or essential attribute” or “distinguishing attribute[.]” Webster’s Ninth New Collegiate Dictionary 963 (9th ed.1987). That is, a quality is an attribute used to differentiate individuals within a class, compare them to one another, or explain why one individual in a class or subset of a class is different from others within the wider class. Out of the three possible “qualities” in the exclusion, only two serve to differentiate from the wider class — the subset of assureds facing liability for assault and battery and the subset of assureds who committed or directed assault and battery. It is least likely that “such” refers back to “any Assured” because “any Assured” is the complete class of assureds, not a subset of the class identified by some unique characteristic. Nor is “any Assured” the quality “just specified.” Finally, if “such” refers back to the entire class of “any Assured,” the exclusion is redundant, but using such to refer to either of the other qualities gives meaning to the phrase “such Assured” that is consistent with the plain and common usage of the word “such.”
Considering the plain and customary usage of the word “such,” it is difficult to construct a hypothetical sentence that carries the same structure as the policy exclusion in this case where the word “such” refers back to the entire universe of individuals under consideration. For example:
The recess policy does not apply to any student acting up during Mr. Jones’ class, such students are not entitled to recess.
Do all students in Mr. Jones’ class lose recess privileges, or is it plain that only those students who act up lose recess privileges? If such referred back to “that just specified,” then “any Student,” or the entire class of students who attended Mr. Jones’ class, would lose recess privileges. That is not the commonly understood meaning of the sentence. It is also relevant that it is easy to construct[1] an exclusion that clearly applies to all assureds without ambiguity. For example:
This insurance does not apply to liability arising from an assault and battery committed or directed by any Assured.
Or:
This insurance does not apply to liability of any Assured for assault and battery committed by or at the direction of any Assured.
Where these examples would unambiguously preclude coverage for the underlying claims, in order to reach the same result with the actual exclusion applicable here, “such Assured” must be, for all practical purposes, stripped from the policy language. I therefore do not think that the exclusion applies to the Diocese’s vicarious liability for the torts of its employees.
Finally, although I believe the exclusion is inapplicable to the vicarious claims against the Diocese on its plain language, even if the exclusion is merely ambiguous it should be construed in favor of coverage. Sparks, 647 P.2d at 1132. Arizona law resolves ambiguities in favor of the insured *958 if “after consideration of legislative goals, social policy, and examination of the transaction as a whole[,]” it is not clear how the policy applies to the facts of the particular case. Empl’rs Mut. Cas. Co. v. DGG & CAR, Inc., 218 Ariz. 262, 188 P.3d 513, 515 (2008) (quotation omitted). As the district court noted, both IFC’s and the Diocese’s interpretations of the assault and battery exclusion are at least plausible, and neither interpretation offends public policy as both exclude coverage for intentional torts. See, e.g., Transamerica Ins. Grp. v. Meere, 143 Ariz. 351, 694 P.2d 181, 185-86 (1984). I therefore believe Arizona law requires interpreting the exclusion in favor of the Diocese.
Nothing in the authority cited by the majority compels a different result. American Family Mutual Insurance Co. v. White construed the following provision to preclude coverage for innocent co-insureds:
Violation of Law. We will not cover bodily injury or property damage arising out of ... violation of any criminal law for which any insured is convicted....
204 Ariz. 500, 65 P.3d 449, 452 (Ariz.Ct.App.2003) (emphasis omitted). White relied on Brown v. United States Fidelity & Guaranty Corporation, which interpreted a similar provision to also preclude coverage for innocent co-insureds:
[The insurer] will not pay for loss or damage arising out of any acts committed:
a. By or at the direction of any “insured;” and
b. With the intent to cause a loss.
194 Ariz. 85, 977 P.2d 807, 817 (Ariz.Ct.App.1998). The provisions interpreted in White and Brown use materially different language than the exclusion in the Diocese’s policy. The precluding provisions from White and Brown use the term “any insured” once to unambiguously identify the class of insureds referenced, i.e. all of the individuals covered under the policy. Thus, the precluding provisions from White and Brown exclude coverage entirely based solely on the type of liability. But the exclusion in the Diocese’s policy references assureds twice. First, “Assured” identifies the type of liability excluded — liability arising from acts of assault and battery committed by “any Assured.” Second, “such Assureds” limits the exclusion to those whose acts gave rise to the liability.[2] Thus, while “any insured” clearly limits the type of liability in simply constructed policy exclusions like those in White and Broum, the same reasoning does not apply to the exclusion in the Diocese’s policy due to the additional “such Assured” language. And at the least, the exclusion in the Diocese’s insurance policy has a significant ambiguity not present in the relatively simple exclusions analyzed in White and Brown.
I would hold that the policy exclusion does not apply in this case and would reach the parties’ remaining arguments. I respectfully dissent.

. I recognize that the policy exclusion was drafted by Lloyd’s of London and merely incorporated by IFC into the excess policy. I also note that Lloyd’s of London provided coverage for the underlying claims despite the existence of the exclusion.

. The insurance policies in White and Brown were also family homeowner policies where the class of insureds was limited by the nature of the policies to the family members or residents in the home. White, 65 P.3d at 451; Brown, 977 P.2d at 809. The Diocese’s policy, however, is a general liability excess insur-anee policy issued to a huge organization that provides coverage for the Diocese itself and its employees over a number of parishes, schools, and other sub-units. Such a policy must account for direct and vicarious liability in its exclusions if it is to be sufficiently clear.